## FAYETTE COUNTY.

July Term, 1882, No. 115.  December 30, 1882.

# Layton v. Brightfield.

1. In 1868, G entered into an agreement for the purchase of lands, and he paid the purchase money in instalments. There was evidence that, at the time of the purchase, he said to the vendor that he wanted it for his brother J, and that at the time of the payment he said it was J's money. The deed was made to G, but subsequently he took it back to the vendor, who destroyed it and made another to J. J entered into possession in 1869, and he testified that he retained possession for three years; that he then leased the property; that his last tenant was B; that B went in in April, 1877, but that he made him a written lease August 16, 1878, to hold possession. B, for a consideration, surrendered to the defendant whose vendor obtained the title of G at a sheriff's sale in 1878. There was evidence that he said he was holding under G. G took part in the renting, and the lease was left in his hands. In an action of ejectment by the sheriff's vendee of the interest of J, the Court instructed the jury that the single question was whether B was really the tenant of J at the time he delivered up the possession, and that if they found that he was not the tenant of J at the time he delivered possession to the defendant, their verdict should be for the defendant. *Held,* that this was error.

2. The question of whether or not the transaction was merely a contrivance to defraud the creditors of G, and whether or not the purchase money of the land was really paid by J, and he, therefore, the equitable owner, ought to have been left to the jury.

3. *Semble* that the declarations of G, that the first payment was with the money of J, were evidence as part of the *res gestæ.*

4. *Semble* that the sheriff's sale of the title of G upon a judgment against him, under which the defendant claims, conferred no greater immunity against the effect of G's acts and declarations than was enjoyed by G himself.

5. The finding of the jury was for the defendant, but since that finding under the charge as to the tenancy was limited to the relation of the parties only at the time the possession was delivered to the defendant, the character of B's previous possession was not determined, and it was not determined whether there was a bare entry or a continuing occupancy by J. It, therefore, does not appear whether or not J's resulting trust, if it existed, was barred by the statute of limitations.

Before Sharswood, C. J. ; and Mercur, Gordon, Paxson, Trunkey, Sterrett, and Green, JJ.

Error to Court of Common Pleas of *Fayette County.*

Ejectment commenced October 30, 1879, by Susannah Layton against Charles Brightfield.

Upon the trial in the Court below, Willson, J., the following facts appeared :

On November 23, 1868, Saul Snyder entered into an agreement with Gabriel Murtland for the sale of forty-five acres of land in Tyrone township, Fayette county, the consideration being $1,800, to be paid in six instalments, possession to be given on April 1, 1869, and the deed to be made on or before April 1, 1874.

*Saul Snyder*, for the plaintiff, testified, *inter alia:* "I held possession of the forty-five acres for two years until 1869, and gave the possession to James Murtland. Gabriel Murtland bought it from me. He told me he was buying for his brother James. I made the article of agreement with Gabriel. James Murtland came on the place when I moved away. I made a deed to Gabriel; they wasn't satisfied with the deed, and they came back to me and told me that the land belonged to James, and they wanted the deed made to him. I can't tell you the date of that. I had given the deed to Gabriel; he brought that back and said that I was first to destroy that one, and make one satisfactory. It was destroyed, and then I made one to James; can't tell how long Gabriel had it; can't tell how long after making the article that I made the deed; it was after the payments was run out. Gabriel had paid the money as near as I know, and then I made him the deed. I made the deed to James, when they brought the Gabriel deed back to me. Gabriel paid me the first payment; it was in the neighborhood of a thousand dollars. He said that it was James' money though at the time he paid it. Gabriel paid me most of the money; but James was along several times afterwards. When Gabriel Murtland came to me to buy this, he said he wanted it for his brother James."

Deed from Saul Snyder to James Murtland, dated July 16, 1875, acknowledged same day, and recorded June 29, 1878, was then admitted in evidence without objection.

The record of a judgment in favor of Susannah Layton, the plaintiff, against James Murtland was offered and admitted in evidence, said judgment being dated August 23, 1878, for $247 35, and under which the said property was sold as James Murtland's on May 31, 1879, the plaintiff being the purchaser.

*James Murtland*, for the plaintiff, testified, *inter alia:* "I got possession of this land February, 1869, from Saul Snyder. I lived on it myself three years, and then rented it into tenants' hands from that on till after they sold it from me by Coldren; my last tenant was John Bryan. I had a written article with him."

On cross-examination, he said: "I had it in possession,

[Layton *v.* Brightfield.]

me and my tenants, until it was sold at sheriff's sale as Gabriel Murtland's property. They bought Bryan out, and he went out then and gave it up."

*R. H. Lindsey,* for the plaintiff, testified, *inter alia:* "I drew the lease, dated August 16, 1878, from James Murtland to John Bryan, the day of the sale of Gabriel Murtland's interest."

James Murtland re-called : I signed lease to Bryan on August 16, 1878.

On cross-examination he said: "Bryan did not go in there when I went out. Bryan went in on the 1st of April, 1878. Between the time I went out and he went in, there was George Anderson. Bryan and I had a lease when he went in first on the first year, and when the first year expired, he just stayed on on the old lease. Well, it must have been April, 1877, that he went in. I made this lease on the 16th of August to hold possession of the property. They claimed it as Gabriel Murtland's title instead of mine. It was made about the time the property was sold as Gabriel Murtland's. The purpose of this lease was to hold my title good. I claimed that I had the title. Bryan didn't go in under Gabriel Murtland. Oh, well, he and I and Gabriel all consulted together. We were all together when we consulted, but he went in on it as my property. I can't tell where the article is ; it was in the hands of my brother Gabriel ; it was left in his hands as security. Gabriel took part in renting, but it was rented as my property. Bryan never had an article with Gabriel Murtland. Bryan paid part of his rent to me ; he did not pay any to Gabriel, because I know that I received all the rent that he paid. He never paid all the rent ; he was a dilatory man. I had no deed at the time Bryan went in there under me. Mr. Snyder made the deed to me just before this article was made."

Re-direct examination : Gabriel never claimed any of this land. Gabriel never did claim any land from Bryan.

*James Hazlewood,* for the plaintiff, testified, *inter alia:* "I went to see Bryan at Mr. Coldren's request. I think Bryan said it would cost him about $15 to get a place, and I think that is what we gave him. He just delivered up, and Charles Brightfield went in then."

On cross-examination : Bryan told me he was holding under Gabriel Murtland.

Saul Snyder was re-called by the defendant, and testified substantially the same as above.

The defendant then offered in evidence the record of a judgment in favor of Thomas Mowry against Gabriel

[Layton *v.* Brightfield.]

Murtland for $500, upon a judgment note dated June 29, 1875, and under which the property was sold in October, 1878, to William H. Coldren for $110.

Defendant also offered deed dated September 23, 1878, from W. H. Coldren and wife to Charles Brightfield, the defendant.

*Wesley Cotton,* for the defendant, testified, *inter alia:* " James Murtland told me that Gabriel Murtland owned this property in dispute either in April or May, 1877."

Cross-examined : " When he wanted me to sell the place, says I, Who is the title in ? Said he, Gabriel Murtland ; that is, the deed was in Gabriel Murtland. He said that Gabriel had bought it, and the title would come through him."

*R. H. Lindsey* testified in rebuttal that he read a notice at the sheriff's sale that the property belonged to James Murtland and not to Gabriel Murtland.

The Court below charged the jury, *inter alia,* as follows :

"In addition to all this, on the part of the defendant, it is also claimed that the evidence that has been offered in the case in regard to the purchase by Gabriel Murtland from Snyder and the execution of the deed to Murtland, and then the subsequent destruction of that deed, and the execution of another deed to James Murtland, and the subsequent execution of a lease from James Murtland to John Bryan—this and other matters, it is claimed, go to show that the whole transaction was merely an arrangement between James and Gabriel, whereby the property was to be put into the possession of James Murtland for the purpose of keeping it from being sold in order to pay the judgment of Mowry, that the whole thing was a mere contrivance on their part, and was not an honest transaction, but was a fraudulent one, and it is claimed that the jury may find, from the evidence in the case in regard to the transaction, that Gabriel Murtland was the person who was really the owner of the property in dispute, and that he was the one who was really in possession, and that John Bryan was his tenant, and that when John Bryan delivered up the possession to Brightfield, that Brightfield had a right to receive it, because whatever rights Gabriel Murtland had in the land, it is claimed, passed to Brightfield by reason of the sheriff's sale, and the subsequent conveyance by Mr. Coldren to the defendant. Under the view that we take of the evidence in this case, [there is but a single question for you to determine, and that is, whether John Bryan really was

the tenant of James Murtland at the time that he deliv-
ered possession of the disputed premises to Charles
Brightfield.    If he was, then we instruct you that the
plaintiff is entitled to recover, and Brightfield must go
out and restore the premises to Mrs. Layton, who is en-
titled to stand in the position in which Murtland stood
to Bryan, if Bryan was his tenant.    If, on the other hand,
you find that John Bryan was not the tenant of James
Murtland at the time he delivered possession of the
premises to Charles Brightfield, then we instruct you that
the plaintiff is not entitled to recover, and your verdict
should be for the defendants.    It is altogether a question
of fact, which you are to determine from the evidence
that you have heard.    You have heard the comments of
counsel on the one side and the other, and we leave it
altogether to you, without any disposition or intention
to go over the evidence again, because it has been fully
commented on by counsel on both sides.    But that is the
question we submit to you to determine, if you find that
John Bryan was the tenant of James Murtland at the
time that he delivered the possession of that land to
Charles Brightfield, the defendant, then your verdict
ought to be in favor of Mrs. Layton.    But if, on the
other hand, he was not the tenant of James Murtland,
then the defendant is entitled to your verdict.    So far as
the other questions raised in the case by counsel for the
plaintiff, who have presented a number of points, are
concerned, we will say briefly that those points are re-
fused ; because we are of the opinion, and so instruct
you, that if Bryan was not the tenant of James Murtland
at the time referred to, then the plaintiff has not made
out such a case as would entitle her to recover, independ-
ent of that tenancy.    Her right to recover depends en-
tirely upon her establishing the fact that John Bryan
was the tenant of James Murtland, and the evidence does
not entitle her to recover otherwise.    The jury will un-
derstand that when we speak of him being there as a ten-
ant, we mean as real tenant—not there by an arrange-
ment to act as tenant, but that he was really so, and in
good faith.]''

Plaintiff's counsel excepted to the answers to certain
points which he presented, and to that portion of the
charge inclosed between brackets.

February 9, 1881.    Verdict for the defendant, upon
which judgment was afterwards entered.

Plaintiff thereupon took out a writ of error, assigning
for error, *inter alia,* the refusal of the Court to affirm

the point that if the article of agreement of November 23, 1868, between Gabriel Murtland and Saul Snyder was made by Gabriel for and on behalf of his brother James, and if Gabriel's intention was to buy the land embraced in the article for James and not for himself, and if the money paid under that article for the said land was James Murtland's money, the title of Saul Snyder vested in James Murtland upon such payment, and is now vested in the plaintiff by the sheriff's deed to her; and also that portion of the charge within brackets.

*Edward Campbell* and *D. Downer* for plaintiff in error.

The titles come back from Saul Snyder, and beyond him it is not necessary to go : Patton *v.* Goldsborough, 9 S. & R., 47 ; Riddle *v.* Murphy, 7 S. & R., 230 ; Turner *v.* Reynolds, 11 Harris, 199 ; 10 Johns, 292 ; Watson *v.* Gilday, 11 S. & R., 337 ; Lineweaver *v.* Crawford, 2 Casey, 417 ; Riland *v.* Eckert, 11 Harris, 215 ; McBarron *v.* Gilbert, 6 Wr., 268 ; Glass *v.* Gilbert, 8 P. F. Sm., 266 ; Adams on Eject., 33, (N. 1 ;) Jackson *v.* Harder, 4 Johns, 202.

Gabriel Murtland's title was that of trustee for James Murtland : Watson *v.* Gilday, 11 S. & R., 337 ; 1 W. & S, 9.

Plaintiff's continuous possession of more than ten years was alone sufficient to entitle him to recover : Hoey *v.* Furman, 1 Barr, 295 ; Powell *v.* Smith, 2 Watts, 126 ; Lehman *v.* Kellerman, 15 P. F. Sm., 489 ; Watson *v.* Gilday, 11 S. & R., 337.

*W. H. Coldren* for defendant in error.

The rights were fixed at the date of the entry of the judgment, and not at the time of the sheriff's sale. The transaction was fraudulent.

DECEMBER 30, 1882.—The opinion of the Court was delivered by GREEN, J. : The learned judge of the Court below omits to state any reason for holding that the plaintiff had not made out any case which would entitle her to recover, except on the question whether John Bryan was the tenant of James Murtland at the time he delivered possession of the premises to the defendant. The learned counsel for the plaintiff in error says that the error of the Court in thus holding is so apparent that it is not necessary to prove it by argument, and the counsel for the defendant says that the Court in the charge has stated the case so clearly that it is unnecessary to support it by any

reasoning. It may be that there were sufficient grounds for the action of the Court in refusing the plaintiff's points and limiting the inquiry of the jury to the single question of the tenancy, but it would have been much more satisfactory if they had appeared somewhere in the case, so that we could have known and considered them with an intelligent understanding. On the surface the case appears to develop very simple questions. The plaintiff claimed, and gave some evidence to prove, that James Murtland was the owner of the equitable title in the land by reason of a resulting trust, and established that she had acquired James Murtland's title by means of a sheriff's sale upon judgment and execution against him. It was undisputed that the legal title became vested in Gabriel Murtland, a brother of James, by deed from Snyder, the former owner. It was alleged by the plaintiff that the purchase money of the land was really paid by James Murtland, and that he was, therefore, the equitable owner. In support of this allegation, it was testified by Snyder, the grantor, that when Gabriel bought the land, he said he was buying it for his brother James, and that when he made the first payment of about a thousand dollars, he said it was James' money. He also testified that James Murtland settled on the land—moved there February, 1869, and he had no knowledge that Gabriel ever lived on it. James Murtland testified that he took possession in February, 1869, lived on it three years, and then rented it to tenants who occupied it under him to the time of the sheriff's sale of the land as the property of Gabriel, about September, 1878. He also testified that he paid a part of the purchase money—three hundred dollars—in 1874, which was before any deed was made for the premises. The declaration of Gabriel Murtland that the first payment of a thousand dollars was with the money of James, would certainly be evidence against him if he were a party to this action. We think it was evidence, in any view of the case, as a part of the *res gestæ.* A judgment creditor is not a purchaser, and has no equity as such. He stands on the footing of his debtor, and is not entitled to the protection of a purchaser of the legal title against an equitable owner or his creditors, or to take any advantage which his debtor had not : Cover v. Black, 1 Barr, 493 ; Reed's Appeal, 1 Harr., 476 ; Shryock v. Waggoner, 4 Cas., 430. Hence it may be that the sheriff's sale of the title of Gabriel Murtland upon a judgment against him, under which the defendant claims, conferred no

[Layton *v.* Brightfield.]

greater immunity against the effect of Gabriel Murtland's acts and declarations than was enjoyed by Gabriel himself. We do not decide the question, as it is not before us, and may arise on another trial. The declaration as to the ownership of the money was admitted without objection, and was a competent fact, not conclusive at all, but entitled to be considered in connection with other facts tending in the same direction. For instance, it was proved that Snyder, when he received the last of the purchase money, made a deed to Gabriel for the land, but that both Gabriel and James complained that it was not right, and wanted a deed made to James, which was subsequently done, and the first deed destroyed. Of course, the mere destruction of the first deed would not revest the title in Snyder, and the only value of the fact is as it affects the question of the original meaning of the transaction and the good faith of the parties. It may. have been merely a contrivance to defraud the creditors of Gabriel, and if so, it would have been of no avail against them. But, on the other hand, it may have been an act done in good faith, because the money of James was used in paying the purchase money, and therefore the parties desired the title to be in him. Of all these matters the jury were the judges under proper instructions from the Court. It may be that James did not pay any of the purchase money, or it may be that he paid a part, but not the whole. In the latter event, he would acquire an equitable title to the extent of his payments, and this title would be subject to the lien of judgments against him. It is certainly strange that James, being a witness on the stand, did not testify to the ownership of the first money paid, or of any of the money except the last $300. It is also the fact that Gabriel was not examined at all. Whether he was alive, or dead, or inaccessible does not appear. These omissions in the testimony would constitute a fair subject for the consideration of the jury in determining the questions of the ownership of the money which was paid for the land, and of the good or bad faith of the parties in the whole transaction. But these questions, as it seems to us, should have been submitted to the jury and decided by them. There is another question that might have arisen, and may have been potential with the court, though we find no trace of it on the record. It is this : Granting that James Murtland was the equitable owner by force of a resulting trust, was he not barred by the statute of limitations ? It was proved without contradiction that he did personally occupy the land for three

[Layton v. Brightfield.]

years. This would extend to February, 1872. This action was brought in October, 1879. It was claimed that he occupied it by tenants to the time of the first sheriff's sale, and that at that time John Bryan was his tenant. The Court left to the jury the question whether John Bryan, who did voluntarily deliver the possession to Brightfield, the defendant, was James Murtland's tenant when he did so, or not, and the jury found he was not. But that finding under the charge was limited to the relation of the parties only at the time the possession was delivered to the defendant. The character of Bryan's previous possession was not determined. It may be that it was intended to decide that Bryan was always Gabriel's tenant and not James', but we are not at liberty to infer that, since the question was not so submitted. The lease to Bryan was only made in 1878, on August 16, and the evidence as to that lease is of such a character that the jury might well have inferred it was not made in good faith. Bryan had first entered, as it seems, as a tenant on April 1, 1877, and James Murtland swears he then entered as his tenant, and paid him the rent. We do not discover any contradiction of the testimony that the previous tenancies from 1872 to 1877 were under James Murtland. Now, if the latter was in the actual occupancy of the land by himself or his tenants, the statute of limitations would not run against his resulting trust during the continuance of the occupancy. It was held in Williard v. Williard, 6 P. F. S., 119, that the verbal acknowledgment or confession of the trustee, made either before or after the origination of the trust, to the effect that he held by way of resulting trust, was competent evidence to prove the fact, and further, that if the *cestui que trust* was already in possession, the statute of limitations would not begin to run, and if the statute had begun to run, actual possession and occupancy would stop it. See also Clark v. Trindle, 2 P. F. S., 492. In Douglass v. Lucas, 13 P. F. S., 9, it was held that a bare entry by the *cestui que trust*, without following possession, will not prevent the bar of the statute. It can not be said to have been determined in the present controversy whether there was a bare entry or a continuing occupancy by James Murtland, since that subject was not committed to the jury. We make no decision upon any of the facts in dispute. The case does not appear to us to have been fully developed. We think there was evidence enough to have carried it to the jury under the plaintiff's second point, and that the question of fraud in the transaction should also have

[Buffalo, Pittsburgh & Western Railroad Company *v.* O'Hara *et ux.*]

been submitted to the jury. The judgment is reversed on the second and sixth assignments.

Judgment reversed, and a *venire de novo* awarded.